IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MARION HEALTHCARE, LLC, and MARION ANESTHESIA COMPANY, LLC,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**AISIN MANUFACTURING ILLINOIS, LLC, and ANTHEM BLUE CROSS AND BLUE SHIELD a/k/a HMO MISSOURI, INC.,**<br><br>**Defendants.** | **Case No. 3:25-CV-1719-NJR** |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Marion HealthCare, LLC, and Marion Anesthesia Company, LLC ("Plaintiffs"), initiated this civil action against Defendants Aisin Manufacturing Illinois, LLC ("Aisin"), and Anthem Blue Cross and Blue Shield a/k/a HMO Missouri, Inc. ("Anthem Blue Cross"). Defendants Aisin and Anthem Blue Cross have both separately filed motions to dismiss for lack of subject matter jurisdiction and for Plaintiffs' failure to comply with Rules 8, 9, 10, and 12 of the Federal Rules of Civil Procedure. (Docs. 30, 32). For the reasons set forth below, the Court grants Defendants' Motions to Dismiss Plaintiff's Second Amended Complaint.

## BACKGROUND

Plaintiffs are Illinois-based healthcare providers. (Doc. 23 at p. 1). Defendant Aisin employs 65 individuals who receive health benefits and insurance through an employer-sponsored group health plan ("Plan") administered by Anthem Blue Cross. (Doc. 23 at pp. 1-

2). The Plan is self-funded by Aisin and is an employee welfare plan as defined by The Employee Retirement Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §1002 *et seq.*

On or around January 17, 2025, an unidentified and unnamed individual, Jane Doe, either contacted Anthem Blue Cross via phone call or accessed information via the Internet in order to verify health insurance coverage regarding upcoming medical services. (*Id.* at p. 7). During this phone call or online verification procedure, Anthem Blue Cross represented that Jane Doe was covered under the Plan and did not disclose any applicable limitation on coverage. (*Id*).

After Jane Doe received medical services from Plaintiffs on January 27, 2025, Plaintiffs issued a medical bill to Aisin and Anthem Blue Cross. (*Id.* at p. 2). The charges for the services rendered to Jane Doe totaled $14,355.00; however, Aisin only paid $449.99 to Marion HealthCare. (*Id*). Similarly, Marion Anesthesia's charges amounted to $760, yet they did not receive any payment from Aisin for the services performed. (*Id*). Before receiving the medical services, Jane Doe attempted to execute an assignment of her benefits, claims, and causes of action under the Plan to Plaintiffs. (*Id.* at p. 2).

Between 2023 and 2025, 64 other unnamed individuals, who were also Aisin employees and Plan participants, sought and received medical services from Plaintiffs. (*Id.* at p. 7). Like the aforementioned Jane Doe, these individuals verified their insurance coverage through a phone call to Anthem Blue Cross or via an online verification procedure, and also attempted to assign their benefits to Plaintiffs. (*Id*). The total sum of charges for the healthcare services provided to the 64 individuals and Jane Doe amounted to $895.454.77. (*Id*). Yet, Defendant Aisin only paid Plaintiffs $183,684.29. (*Id*). Before initiating this suit, Plaintiffs exhausted their assigned appeal rights and procedures and Defendants' alleged

underpayment for the medical services provided was not rectified. (*Id*).

Based on these allegations, Plaintiffs bring various claims against Aisin and Anthem Blue Cross for violations of ERISA along with claims of fraud and promissory estoppel under state law. (Doc. 23). Plaintiffs seek payment of the unpaid and underpaid claim balances under the Plan for the medical services provided, costs of suit including attorneys' fees, economic damages, and punitive damages. (*Id*).

Aisin and Anthem Blue Cross have both moved to dismiss Plaintiffs' Second Amended Complaint, arguing that this Court lacks subject matter jurisdiction over Plaintiffs' claims because Plaintiffs lack standing. Defendants also move to dismiss for improper venue, preemption, and failure to state a claim. (*See* Docs. 29, 30, and 32).

## LEGAL STANDARD

A court facing a challenge to subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) must determine whether the party is raising a facial or factual challenge. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). A factual challenge alleges that, even if the pleadings are sufficient, there is no basis for subject matter jurisdiction. *Id.* A facial challenge, on the other hand, argues the plaintiff has not sufficiently pleaded a basis for subject matter jurisdiction. *Id.* "In reviewing a facial challenge, the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Id.*

Federal Rule of Civil Procedure 12(b)(6) requires that a plaintiff allege enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). There need not exist detailed factual allegations, however, there "must be enough to raise a right to relief above the speculative level." *Id.* at 555. The plaintiff must provide the Court with "more than labels and conclusions, and a formulaic recitation of the elements."

*Id*. at 570. When evaluating a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded facts as true and draw all possible inferences in favor of the plaintiff. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 (7th Cir. 2012).

In evaluating a complaint on a motion to dismiss, "district courts are free to consider 'any facts set forth in the complaint that undermine the plaintiff's claim.'" *Esco v. City of Chicago*, 107 F.4th 673, 678 (7th Cir. 2024) (quoting *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013)). "The court, therefore, may examine exhibits, including video exhibits, attached to the complaint, or referenced in the pleading if they are central to the claim." *Id.*; *see also Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) (explaining that a court may consider exhibits referred to in a complaint, even if not attached to it, as "plaintiff could evade dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proved that his claim had no merit").

## DISCUSSION

### I. Standing

Counts I and II of this suit are brought under The Employment Retirement Income Security Act ("ERISA"), 28 U.S.C. §1001 *et seq.* (Doc. 23). Therefore, ERISA is the governing law by which the Court must adjudicate these claims. For the Court to move forward to the merits of this case, Plaintiffs must have statutory standing under ERISA.

Civil actions may be brought under ERISA to recover plan benefits, but they may only be brought by plan participants or beneficiaries. 29 U.S.C. § 1132(a)(1)(B). Plaintiffs Marion HealthCare, LLC, and Marion Anesthesia Company, LLC, are medical care providers in the State of Illinois. They are neither plan participants nor beneficiaries in their own right—

instead they assert derivative standing based on a purported assignment of benefits from the 65 undisclosed patients. (Doc. 23 at p. 1).

Based on the Plan and binding precedent from the Court of Appeals for the Seventh Circuit, the Court finds that Plaintiffs do not have the requisite standing for this suit to move forward.

There are two categories of ERISA plans: pension plans and welfare plans. The Plan involved in this case is a welfare plan, which includes health, legal, vacation, and training benefits. (Doc. 33 at p. 2). Congress included a provision in ERISA prohibiting assignment or alienation of *pension* benefits. *Plumb v. Fluid Pump Serv., Inc.*, 124 F.3d 849, 863 (7th Cir. 1997) (emphasis added). However, there is no analogous prohibition with respect to welfare plans. That means participants of ERISA plans can assign their rights and interests to medical providers—*unless* the applicable ERISA plan forbids such assignment. *Morlan v. Universal Guar. Life. Ins. Co.*, 298 F.3d 609, 614 (7th Cir. 2002). Therefore, to determine whether a Plan participant can assign his or her rights, the Court must turn to the terms of the applicable Plan. ERISA demands that courts *strictly* enforce the terms of plans. *Kennedy v. Connecticut General Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir. 1991) (emphasis added) (internal citations omitted).

At the threshold, the Court notes the lack of clarity between plans. The parties have submitted a 2015 plan (effective January 1, 2015), and a 2024 plan (effective January 1, 2024). (Doc. 30-1). While patient Jane Doe received medical services in January 2025, meaning that the 2024 Plan was presumably in effect, it is unclear which Plan was in effect when the remaining 64 unnamed patients received their medical services "at various times between 2023 and 2025." (Doc. 3 at pp. 2-3). And neither Plaintiffs nor Defendants have attempted to

shed any light on this matter. Out of necessity, the Court will analyze the present Motions to Dismiss under both plans.

The 2015 and 2024 plans both include an express anti-assignment or nonalienation provision[1]:

> **[2015] Section 15.16 Nonalienation of Benefits:** Notwithstanding any other provision of the Plan:
>
> (a) Except as otherwise expressly provided under any Component Plan or under paragraph (c) below, a Covered Person's rights, interests, and Benefits shall not be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, garnishment, execution, encumbrance, or charge of any kind, whether voluntary or involuntary, and any attempt to do so shall be void.
>
> **[2024] Section 9.1 Nonalienation of Benefits.** No interest, right, or claim in or to any part of or all of any Benefit payable from the Plan will be assignable, transferable, or subject to sale, assignment, hypothecation, anticipation, garnishment, attachment, execution, or levy of any kind and the Plan Administrator will not recognize any attempt to so transfer, assign, sell, hypothecate, or anticipate the same except to the extent required by law, and any attempt to do so in violation of this provision will be void. This provision will not apply to any "qualified medical child support order" or "national medical support notice" as defined in Section 9.2, below, and will not apply to a Medicaid assignment. (Doc. 30-1 at p. 144).

Plaintiffs argue the anti-assignment provisions do not apply to this case for several reasons. Their first argument is the non-alienation provision in the 2015 plan should not be read in isolation, and that when considering it in light of the next provision (Section 15.16(b)), it appears that it was to "prohibit creditors from attempting to garnish or encumber a benefit subject to bankruptcy or other proceedings." (Doc. 33 at p. 4). Next, Plaintiffs, in a section entitled "Relevant Citations to the Law," call the Court's attention to cases in which provider

[1] Plaintiffs express indignation at Defendants' usage of the term "anti-assignment clause." *See* Doc. 33 at 9. However, a brief look at Seventh Circuit precedent surrounding non-alienation clauses would have revealed that the two terms are used synonymously, *see Kennedy*, 924 F.2d at 700 and *Morlan*, 298 F.3d at 614, and would have quashed the need for Plaintiffs' tribute to President Lincoln and his "quips."

assignments were upheld. (*Id.* at p. 8).[2] Pulling from the 2015 plan, Plaintiffs contend Section 12.08 (Payment), which allows participants and beneficiaries to authorize payment to a service provider, supersedes the nonalienation clause and is evidence that direct payment to Plaintiffs qualifies as a valid assignment. (*Id.* at pp. 8, 14-15). In a similar vein, Plaintiffs then argue Defendants' acquiescence to Plaintiffs' pursuit of administrative appeals waived any argument over an improper assignment. (*Id.* at pp. 14-15).

First, Plaintiffs argue that the 2015 Plan's Section 15.16(b)'s discussion of the situation when a covered person becomes bankrupt necessarily implies that the nonalienation provision, Sec. 15.16(a), is limited to the purpose and context of prohibiting creditors "from attempting to garnish or encumber a benefit subject to bankruptcy or other proceedings." (Doc. 33 at p. 4). Plaintiffs then state, without support from case law or any statutory interpretation devices, that the nonalienation provision cannot reasonably be interpreted to mean that a Covered Person is prohibited from assigning rights to their healthcare provider. (Doc. 33 at p. 4). The Court is not so moved. There is no indication in the plain language of Section 15.16(b) that it is confined to "prohibit[ing] creditors from attempting to garnish or encumber a benefit subject to bankruptcy or other proceedings."(*Id*). Further, should the Court entertain this argument that the nonalienation is limited to the bankruptcy/creditor context, Plaintiffs' argument still suffers. The 2024 Plan, which is the operative plan, at least with respect to patient Jane Doe, has no analogous provision relating to bankruptcy.

Plaintiffs' next argument conflates the right of direct payment with the right to bring a civil action. Section 12.08 of the 2015 Plan authorizes a beneficiary to assign payment for

[2] Notably, none of the cases cited in this section involved a plan with an anti-assignment clause.

Benefits to be paid directly to the person rendering services. (Doc. 30-1 at p. 74). As Defendant Aisin argues, Section 12.08 discusses "payment mechanics" and should not be taken to mean more. (Doc. 41 at p. 3). Under the canon of harmonious reading, provisions of a text should be interpreted in a way that renders them compatible instead of contradictory. A. Scalia & G. Garner, Reading Law 180 (2012). To read Section 12.08 as Plaintiffs do would be to find conflict in the Plan where it does not exist. Both provisions can and do apply with equal force: the Plan expressly allows direct payment to service providers and, simultaneously, expressly prohibits assignment of Benefits to service providers. Similar provisions sanctioning and acknowledging direct payments are present in Sections 6.13 and 11.3(j) of the 2024 plan; no conflict exists between them and Section 9.1's nonalienation clause either.

Other district courts in this circuit have denounced such readings of direct payment clauses. In a case with similar facts adjudicated in the Central District of Illinois, the nonalienation provision was held to prevail over the direct payment clause. *OSF Healthcare System v. Board of Trustees of SEIU Healthcare Illinois Home Care & Child Care Fund*, 456 F.Supp.3d 1018 (C.D. Ill. 2020). The plaintiffs in *OSF Healthcare* argued that because the plan made direct payments to the healthcare provider, it was a beneficiary to the Plan (thereby granting it standing). *Id.* at 1023-24. However, Judge Michael Mihm held that direct payments did not, in fact, confer beneficiary status on the healthcare provider where there was an unambiguous anti-assignment clause. *Id.* at 1024. In granting the defendants' motion to dismiss, the court emphasized the increasing trend of district and circuit courts holding that anti-assignment provisions in ERISA plans may preclude a provider from bringing actions under the Act. *Id.* at 1026-27 (citing *Univ. Spine Ctr. v. Aetna, Inc.*, 774 F. App'x 60 (3d Cir. 2019); *Dialysis Newco, Inc. v. Cmty. Sys. Grp. Health Plan*, 938 F.3d 246 (5th Cir. 2019); *Griffin*

*v. United Healthcare of Ga. Inc.*, 754 Fed. App'x. 793 (11th Cir. 2018); *DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.*, 852 F.3d 868 (9th Cir. 2017); *Neurological Surgery, P.C., v. Travelers Co.*, 243 F. Supp. 3d 318 (E.D. New York 2017); *Univ. of Wis. Hosps. and Clinics Auth. v. Aetna Health & Life Ins. Co.*, 144 F. Supp. 3d 1048 (W.D. Wis. 2015); *DeBartolo v. Blue Cross/Blue Shield of Ill.*, No. 01-5940, 2001 WL 1403012 (N.D. Ill. Nov. 9, 2001) ("*DeBartolo I*"); *Neurological Res., P.C. v. Anthem Ins. Cos.*, 61 F. Supp. 2d 840, 843 (S.D. Ind. 1999)).

Finally, with regard to Plaintiffs' waiver argument, the fact that Plaintiffs were allowed to pursue administrative appeals does not equal standing to pursue civil actions. *OSF Healthcare Sys. v. SEIU Healthcare IL Pers. Assistants Health Plan*, 671 F. Supp. 3d 888, 891-2 (N.D. Ill. 2023) (holding that while ERISA regulations "expressly allow[] authorized representatives, like OSF, to file *internal* claims and appeals . . . [they] do not confer standing to authorized representatives to pursue civil actions against a plan."). Moreover, there is an express "No Waiver or Estoppel" clause in the 2015 Plan stating that "[n]o provision of the Plan shall be deemed to have been waived, and there shall be no estoppel against the enforcement of any provision of the Plan, except by written instrument of the party charged with such waiver or estoppel." (Doc. 30-1 at p. 84).

Because both plans have an express anti-assignment provision, Plaintiffs Marion HealthCare, LLC and Marion Anesthesia Company, LLC do not have the requisite statutory standing to pursue these claims under ERISA. Accordingly, the Court does not have subject matter jurisdiction over the claims.

**II. Counts III, IV, V, and VI of the Second Amended Complaint**

Counts III, IV, V, and VI of the Second Amended Complaint are state law claims against Aisin and Anthem Blue Cross for fraud and promissory estoppel. As Counts I and II

are dismissed for lack of subject matter jurisdiction, the Court declines to exercise supplemental jurisdiction over the remaining four state-law claims. *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010) ("When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims.").

## CONCLUSION

For these reasons, Defendants' Motions to Dismiss Plaintiff's Second Amended Complaint (Doc. 23) is **GRANTED** on all counts.

The Complaint filed by Plaintiffs Marion HealthCare, LLC, and Marion Anesthesia Company, LLC, is **DISMISSED without prejudice**.

**IT IS SO ORDERED.**

**DATED: September 15, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**